The People of the State of Illinois, Plaintiff-Appellee, v. Henry L. Odom, Defendant-Appellant.

Gen. No. 64–77.

Fifth District.

June 13, 1966.

Phillip A. Theis, of Granite City, for appellant.

Joseph R. Bartylak, State's Attorney, of Edwardsville, for appellee.

EBERSPACHER, J.

This is an appeal from a conviction of the offense of burglary and theft. After a jury verdict of guilty, sentence of 3 to 8 years was imposed. Defendant was represented by the Public Defender who waived all posttrial motions.

Appeal is taken on three principal grounds: First, that defendant was deprived of procedural due process in that the conviction was based in whole or in part on an involuntary confession which was placed in evidence. Second, that defendant was deprived of procedural due process in that his court-appointed counsel's lack of competency and/or diligence prevented defendant's obtaining a fair trial. Third, that the court deprived defendant of his constitutional right to be represented by counsel of his own choice, or in the alternative, to appear and defend himself.

■ A defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession, even though there is ample evidence aside from the confession to support the conviction. Jackson v. Denno, 378 US 368, 84 S Ct 1774; Blackburn v. Alabama, 361 US 199, 80 S Ct 274, 4 L Ed2d 242; Spano v. New York, 360 US 315, 79 S Ct 1202, 3 L Ed2d 1265.

■ From the evidence taken at the trial commenceing on February 5, 1964, we find that defendant was taken into custody at about 5:30 in the morning. Both he, his wife and his brother were conferred with at the police station immediately following his arrest with reference to his situation. Both he and his wife testified, that the conversations were with reference to cooperation between the police department and the family in an effort to get treatment for defendant at the Alton State Hospital, a mental institution. There is uncontroverted evidence that defendant had received tranquilizers and psychiatric treatment at Barnes hospital up until approximately a month previous to his arrest, and was taking prescribed medicine for his nerves at the time of his arrest. At about 3:00 o'clock in the afternoon of the same day, defendant signed a confession; he testified that it was brought to him typed up for signature and that he signed it to avoid humiliation and embarrassment to his wife and children, and with the understanding that it was to be used for his admission to the hospital, rather than a prison psychiatric ward. The police admitted that they had in the forenoon called Barnes Hospital to get defendant's hospital record, and that they had also directed defendant to call the hospital to get such record, but that the record was never obtained. Defendant further testified that when he

called the hospital, the secretary in charge advised him that he could give permission and the hospital would see about presenting the necessary records to have him admitted to the hospital, and that he signed a paper for this purpose which was never presented at the trial. In rebuttal the police officers testified only that no promises were made to him previous to and at the time of his signing the confession; they do not deny the various conversations between themselves and defendant and between themselves and his wife on that day, previous to the signing of the confession, to the effect that defendant needed treatment. That he had little or no sleep either before being apprehended or after, until such time as he signed the confession is apparent from the record. These facts combined give rise to a serious question whether the confession was not in fact the product of coercion. Courts recognize that coercion can be mental as well as physical, and as was explained in Blackburn v. Alabama, supra, the Fourteenth Amendment forbids the use of confessions so procured "because of the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will."

The record indicates that counsel was appointed on November 4, 1963, approximately four weeks after defendant's arrest. On November 21, 1963 he filed a petition for a sanity hearing. The defendant was examined by two psychiatrists, one of which testified at the sanity hearing. Presumably, the public defender made no request for the making of a record of that proceeding, as no record was made of any portion thereof. After the jury returned its verdict that defendant was sane, a plea of not guilty was entered and his motion to reduce the bond was refused.

■ ■ The public defender exercised none of the preliminary procedures available to him prior to trial. The case was brought to trial on February 5, 1964, some three months after the public defender's appointment to represent him. During that entire time both client and attorney were in the same city, the former being confined in the county jail where he was always available for consultation. Despite this fact, his attorney failed to file a motion to suppress the confession under the provisions of Ill Rev Stats 1963, c 38, § 114–11. Such a motion would have required the State to sustain the burden of satisfying the court that the confession was given voluntarily if such was to be used in evidence at trial. Due process requires that a coerced confession be excluded from consideration by the jury, and a defendant has a constitutional right to object to the use of a confession and to have a fair hearing on the issue of voluntariness, uninfluenced by the truth or falsity of the confession. Jackson v. Denno, supra. But in the instant case defense counsel made no effort to exclude the confession despite the fact that he must have known, if he conferred at all with his client or his client's wife, that serious question existed as to the voluntariness of the confession. In so doing he gave his client no protection whatsoever against being convicted on the basis of a coerced confession. To compound the offense, no instruction was even given to the jury to disregard the confession if it found that it was given involuntarily. Even if this were done, the United States Supreme Court's holding in Jackson v. Denno, supra, would condemn the conviction for:

"Due process of the law requires that . . . the issue of coercion be tried by an unprejudice trier. . . . it is useless to contend that a juror who has heard the confession can be uninfluenced by his opinion as to the truth or falsity of it. . . . And the

rule of exclusion ought not to be emasculated by admitting the evidence and giving to the jury an instruction which . . . cannot be obeyed.

"Whether a confession is voluntary is a preliminary question which must be decided by the Court from evidence heard out of the presence of the jury."

The natural import of the instruction given to the jury is that some weight was to be given the confession, and the jury was not instructed to disregard the confession even if it believed it to be a product of coercion rather than the exercise of free will. Defense counsel thus emasculated his client's efforts to show that the confession was involuntary. Neither before nor in the course of trial did he ever confront the court or jury as to the voluntariness of the confession.

Similarly, the public defender failed to file a motion to suppress Exhibits #1, 2 and 4, the photographs taken and bills confiscated at defendant's home. The record contains conflicting versions as to how these exhibits were obtained. The natural import of one of the officer's testimony is that the search of defendant's home at about noon was made through the use of defendant's signed search consent. But defendant testified that he did not sign that consent until about 3:00 or 3:30 p. m., after his home had been searched, the photographs taken and the bills confiscated. That testimony is not directly contradicted. On the other hand, another officer testified that the search had been conducted pursuant to the obtaining of a search warrant. Mrs. Odom denied that neither the search consent marked Exhibit #3 nor the purported search warrant, which was marked Exhibit #6, but never offered in evidence, were produced before the officers commenced the search. Competent and diligent counsel would have demanded a more satisfactory foundation for the admission of Exhibits #1, 2

and 4 by filing a motion to suppress under the provisions of Ill Rev Stats 1963, c 38, § 114–12 as it is apparent that the officers could not have shown reasonable cause for the issuance of a search warrant at that stage of the investigation before they had obtained a confession, and if they had done so, they would not have asked defendant to sign a search consent some three hours later. It appears that they had neither a search warrant nor the search consent at the time the search was made and Exhibits #1, 2 and 4 obtained. It can hardly be asserted that the placing of Exhibits #1, 2 and 4 in evidence had no prejudicial effect on the defense. But these exhibits were placed in evidence without any objection on the part of defense counsel.

No question was raised by defense counsel as to why defendant was charged with the theft of Fifty-eight Dollars ($58) while Exhibit #4 was an envelope containing Sixty-six Dollars ($66), nor does the record contain any explanation for this disparity.

After allowing the confession, the photographs and the confiscated cash to go into evidence without raising any serious opposition, and after the State rested its case, defense counsel saw fit to present only the testimony of defendant and his wife, who had testified previously. Through the testimony of Mrs. Odom, he made only a half-hearted effort to show that the confession was extracted through the use of promises of hospitalization and this testimony was stricken from the record.

The defense called first, defendant's wife whose testimony concerning the day of defendant's arrest and the various conversations with the police officers preceding the taking of the confession. The public defender also had her testify that defendant had previously been convicted of a felony, that it was burglary and that it was burglary of a police officer's home, that defendant served a penitentiary sentence, and was released on parole.

On her cross-examination the People went into further details of her knowledge of defendant's commission of the crime of burglary on that occasion. The second defense witness was defendant himself, the defense again brought out the defendant had been convicted of burglary in 1960, received a sentence of one to four years, served 13 months, was paroled. On cross-examination the details of that offense were again gone into without objection. The result was that throughout the case for the defense the jury was constantly reminded of the prior conviction.

■ Appellant maintains that the public defender's failure to submit to the court and resolve before trial the issues of the voluntariness of the confession and the legality of the manner in which the prosecution obtained Exhibits #1, 2 and 4, coupled with the lack of any jury instructions as to the issue of the voluntariness of the confession and the legality of the search and seizure constitute such incompetency and/or lack of diligence by defense counsel as to deprive defendant of procedural due process.

■ ■ A public defender is expected to be zealous in defending the rights of those he is assigned to defend. People v. Morris, 3 Ill2d 437, 121 NE2d 810. A defendant's right to aid of counsel is not satisfied by the mere formality of an appointment of an attorney by the court but requires effective representation throughout all stages of trial, and where such representation is of such low calibre as to deprive him of a fair trial on the issues the guarantees of due process are violated. People v. DeSimone, 9 Ill2d 522, 138 NE2d 556; People v. Morris, supra; People v. Gardiner, 303 Ill 204, 135 NE 422; People v. Winchester, 352 Ill 237, 185 NE 580; People v. Schulman, 299 Ill 125, 132 NE 530.

An independent investigation of this record discloses that it is replete with evidence of a lack of diligence on

the part of court appointed counsel in violation of appellant's right to a fair trial. As was said in Spano v. People of the State of New York, supra, ". . . in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from actual criminals themselves."

We commend counsel appointed by this court for a concise and excellent brief and argument.

The judgment is reversed.

GOLDENHERSH, P. J. and MORAN, J., concur.