THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DALE MARTIN, Defendant-Appellant.

First District (1st Division)   No. 1—90—0699

Opinion filed September 21, 1992.—Rehearing denied November 4, 1992.

Randolph N. Stone, Public Defender, of Chicago (Murray M. Coffey and Karen E. Tietz, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Christine Perille, Special Assistant State's Attorney, and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Following a jury trial, defendant Dale Martin was found guilty of first-degree murder. The trial judge sentenced defendant to 30 years in the Illinois Department of Corrections. Defendant raises three issues on appeal.

First, defendant asserts that the trial court erred in denying the defense's request that the jury be instructed as to lesser-included offenses simply because such instructions were seemingly contradictory with his alibi defense.

Second, defendant contends that he was denied his constitutional right to the effective assistance of counsel when his attorney failed to present a pretrial motion to quash his arrest for lack of probable cause. Defendant argues that such a motion would have

been granted and would have resulted in the suppression of his incriminating statements as the fruit of an illegal arrest.

Third, defendant argues that he was denied his right to the effective assistance of counsel because his attorney failed to tender a jury instruction regarding the lesser-included offense of second-degree murder.

On December 23, 1988, at approximately 9:30 a.m. the body of Mike Bond (the victim) was discovered in the rear stairwell of a building at 1226 West 69th Street in Chicago. The victim's body was covered with debris and only partially clothed with his shirt and sweater pulled up over his head. There were numerous bruises and lacerations on the body, including over the right eye, on the neck, in the chest and over the groin. Both of the victim's knees were severely scraped and a broken bottle was sticking out of his left calf. The officers discovered the remainder of the victim's clothes in the stairwell with the body except for one missing shoe. The officers also discovered the handle of a broken cane, later to be identified as belonging to the victim. One shoe, however, was missing from the scene.

The officers followed a trail of smeared blood which led out of the stairwell down the block to the hallway of a building at 1220 West 69th Street. In the hallway, the officers found blood smears, the other half of the victim's cane and the victim's other shoe.

Detective Robert Kocan testified in court that, during their investigation, he and his partner, Detective Stanley Kroll, were given the names of the defendant and Robert House as being two of the last people to have been seen with the victim. According to the detective, defendant was located on December 27, 1988, at approximately 1 p.m. at the pool hall at 1208 West 69th Street. The detectives requested that defendant accompany them to the station to talk about the victim's murder and defendant consented. At the station, defendant was placed in an interview room and asked where he was on the day of the victim's murder. The detectives then asked defendant to stay in the interview room while they went to check out his story. They returned several hours later at approximately 4 p.m. and told defendant that his story did not check out. According to the detectives, defendant then gave another story and insisted that he be given a lie detector test to prove his innocence. They transported defendant to central police headquarters at 11th and State for a polygraph examination. After the examination he was returned to the interview room at 3900 South California. Defendant was informed by the detectives that he had failed the

polygraph test and that he was not telling them everything. Subsequently, they left defendant in the interview room and questioned House in another interview room. At approximately 8 p.m., after taking House to take a lie detector test and returning him to the station, Detectives Kocan and Kroll left the station for the evening.

The following day, December 28, 1988, at approximately 10 a.m., Detective Kocan returned to the station. Defendant was still in the interview room. Detective Kocan arranged a lineup for 1 p.m. that afternoon. At the lineup, a witness, Jeffrey Nichols, identified both defendant and Mr. House as the two men he saw dragging and carrying the victim from the hallway at 1220 West 69th Street. Defendant was placed under arrest and read his *Miranda* rights after the witness positively identified him in the lineup.

After the lineup, defendant was placed back in the interview room. At approximately 7:30 p.m., Detectives John Paladino and Frank Connelly spoke to defendant. According to Detective Paladino's testimony, after reading defendant his *Miranda* rights, defendant indicated he would answer questions. He then prepared a sketch of the path taken in disposing of the victim's body and he signed it. Detective Paladino then contacted the felony review unit, and Assistant State's Attorney Teresa Gray arrived at approximately 1 a.m. on December 29. At approximately 3 a.m., Assistant State's Attorney Gray and Detective Paladino took a statement from defendant after again reading him his rights.

According to defendant's statement, on the night of the murder he was drinking with some friends at the Chicken Shack. This group included House and the victim. After leaving the Chicken Shack, the group went to the pool hall. The victim was not in this group. Everyone left the pool hall at about 4:20 a.m. on December 23, 1988.

As he was walking down the street, defendant noticed the victim in the hallway at 1220 West 69th Street drinking some wine. Defendant entered the hallway and asked the victim to share the wine with him. The victim refused, the two men argued and the victim pushed defendant. Defendant then banged the victim's head against the wall, and the victim fell down the stairs. According to defendant's statement, House then came in the hallway, picked up the victim's cane and broke it over his body. House and defendant looked outside to see if anyone was around, picked up the victim and carried him outside. He was too heavy for them and kept falling, so they began to drag the victim. They dragged him first by his arms and then by his feet causing his pants and shirt to be pulled off his body. According to the statement, the victim "began

to come to" and House broke a bottle and apparently stabbed the victim in the chest. The two left the body in the stairwell behind the building at 1226 West 69th Street and covered it with debris and garbage in order to hide it. According to defendant, the victim was still moaning when they left him.

A pretrial motion to suppress the oral and written statements of defendant was filed on the grounds that he was physically coerced into making the statements. Detective Kocan testified that at no time was defendant beat about the head, kicked in the body, or subjected to any method of physical or psychological coercion. Kocan asserted that defendant was not taken before a judge on December 27 because he was not under arrest. Detective Kocan testified that defendant was not arrested and placed in handcuffs until approximately 1 p.m. on December 28, 1988, after he was positively identified in a lineup. According to Kocan, prior to defendant's arrest on December 28, he was not handcuffed or restrained in any way and was free to go at any time. He was advised of his *Miranda* rights and was not prevented from communicating with an attorney. In addition, before taking the polygraph test, defendant was advised of his rights concerning that test and that he did not have to take it. Detective Kroll's testimony supported Detective Kocan's testimony in every respect. Detective Kroll, however, testified that he was not present at any time on December 28.

The defense did not present any evidence and did not put defendant on the stand at the suppression hearing. The defense relied upon the length of defendant's stay at the police station to support the allegations of coercion. The trial judge denied the motion to suppress. Based solely on the evidence presented by the State, he ruled that the State had met its *prima facie* burden to show the voluntariness of defendant's statement. The judge determined the testimony of the State's witnesses to be credible and held that defendant was not arrested until December 28 and that at no time was he confined against his will or physically or psychologically abused.

Charles Reed testified that he and Nichols got off work at Skipper Liquor and Grocery, which is across the street and east of 1220 West 69th Street, between 4:30 and 4:40 a.m., on December 23. They were seated in Nichols' car about 80 to 100 feet away from the 1220 building when two men came out of the building carrying a third person. They kept dropping him and picking him up and ultimately dragging him. Reed testified he recognized House and defendant from the neighborhood. On cross-examination, Reed ac-

knowledged that he did not see the faces of the people but recognized them from their demeanor and actions.

Nichols also testified that he saw House and defendant dragging a body the morning of December 23. He testified that prior to driving off he noticed what looked like bloodstains on defendant's shirt. After dropping off Reed, Nichols came back east down 69th Street and saw House and defendant again. On December 28, Nichols identified House and defendant in a lineup.

Dr. Eupil Choi, the assistant medical examiner, testified that there were "many stab wounds" in the victim's neck, back and chest. There were also lacerations and scratches on the victim's forehead, cheek, chest, groin, face and knees. Based on his experience, training, expertise and examination of the body, Dr. Choi gave his opinion based on a reasonable degree of medical certainty that the cause of death was multiple stab wounds and "blunt trauma" to the head. He stated that these injuries were consistent with the victim being dragged and dropped on the sidewalk and being beaten and stabbed by the broken cane.

Defendant testified that he was taken from his girl friend's apartment to the station at approximately 8:30 p.m. on December 27. He testified that he was not arrested nor was he handcuffed to a steel bar in the wall of the interview room until about an hour after he got to the station and had denied that he saw the victim after they left the Chicken Shack. He stated that after he was handcuffed, the officers beat him "upside the head," kicked him in the chest and choked him until he passed out three or four times. He asserts that he did not make his statement on the morning of December 29 voluntarily, but only to stop the beating.

At the jury instruction conference, the defense requested that the jury be instructed as to a "lesser included crime." The defense did not tender any specific instruction and merely requested that the jury be allowed to find "whatever it could find." When pushed by the trial judge, the defense suggested "battery, involuntary." The trial judge denied any instruction as to any lesser-included offense. The defense did not object, but acquiesced in the court's decision. The jury was instructed on first-degree murder and accountability.

Following the bench trial, the trial judge found House not guilty. The jury found defendant guilty of first-degree murder. Defendant filed a motion for a new trial. The defense based its motion for a new trial upon the pretrial motion to suppress and the

testimony given in support thereof. The motion was denied, and defendant was sentenced to 30 years in the penitentiary.

Defendant's first contention on appeal is that the trial court erred in denying his request for jury instructions on lesser-included offenses to first-degree murder simply because such instructions would be inconsistent with his alibi defense. Specifically, defendant asserts that he was entitled to the benefit of any defenses supported by the evidence and that there was sufficient evidence to support an instruction on a lesser-included offense. The State asserts that defendant has waived this question on review by failing to preserve the issue at trial and by not raising the issue in his motion for a new trial. Alternatively, the State asserts that a lesser-included offense instruction was not supported by the evidence. The relevant passage from the transcript reads:

"MR. VICTOR [Defense attorney]: I would like to have lesser included crime [sic].

THE COURT: You the instruction of the lesser included crime [sic]?

MR. VICTOR: If they won't—giving them the option of finding him guilty of the crime that he is charged with or some lesser included.

THE COURT: What lesser included?

MR. VICTOR: Whatever they can find.

THE COURT: Well, what do you want? Don't tell me whatever they can find, they can charge him for battery I guess.

MR. VICTOR: Battery, involuntary.

THE COURT: Where is there evidence of that in there? There isn't any evidence. He says he wasn't there, he didn't do it. How could the jury possibly find a lesser included verdict under those circumstances? If he said he was there and had a fight with him, that is one thing but he says he is not there. Why do you instruct them on a lesser included theory?

MR. VICTOR: Okay, okay, I will buy that, I will withdraw it."

■ The general rule is that the court has no duty to give instructions such as on a lesser-included offense unless properly tendered by trial counsel. (*People v. Enoch* (1988), 122 Ill. 2d 176, 199, 522 N.E.2d 1124, 1136.) Additionally, the Illinois Supreme Court has stated that "an included-offense instruction is required only in cases where the jury could rationally find the defendant guilty of the lesser offense and not guilty of the greater offense." (*People v.*

*Perez* (1985), 108 Ill. 2d 70, 81, 483 N.E.2d 250, 255, citing *Hopper v. Evans* (1982), 456 U.S. 605, 612-13, 72 L. Ed. 2d 367, 373-74, 102 S. Ct. 2049, 2053-54.) In other words, if the evidence supports either a conviction on the crime charged or a verdict of not guilty, but does not support a conviction on the lesser offense, the trial court would commit error in giving a lesser-offense instruction. (*Enoch*, 122 Ill. 2d at 200, 522 N.E.2d at 1136-37, citing *Hopper*, 456 U.S. at 611, 72 L. Ed. 2d at 373, 102 S. Ct. at 2052; *People v. Ivory* (1991), 217 Ill. App. 3d 619, 623, 578 N.E.2d 278, 281; *People v. Moore* (1990), 206 Ill. App. 3d 769, 774, 565 N.E.2d 154, 157.) In light of the above colloquy between the court and defense counsel, there is a question as to whether the request for a lesser-included offense instruction was properly tendered to the court and, if so, whether such an instruction was even supported by the evidence adduced at trial. However, we choose to decide this case under the doctrine of waiver, and hold that defendant has waived this question on review.

In Illinois an alleged trial error is properly preserved for review only if there is a contemporaneous trial objection and a subsequent written post-trial motion for a new trial addressing the issue. (*Enoch*, 122 Ill. 2d at 187, 522 N.E.2d at 1130.) Pursuant to *People v. Cadwallader* (1989), 181 Ill. App. 3d 488, 501, 536 N.E.2d 1319, 1327, in order to preserve an instructional error for review, a defendant must object at the instruction conference and renew that objection in a written post-trial motion. In this case, defendant failed to make any such objections.

However, under the "plain error" doctrine, a reviewing court will address alleged errors which were not properly preserved if either (1) the evidence is "closely balanced" and there is a possibility that an innocent person may have been convicted, or (2) the asserted error is of such magnitude that, if true, would have denied the accused a fair trial. (*People v. Herrett* (1990), 137 Ill. 2d 195, 209-10, 561 N.E.2d 1, 7-8, citing *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233, 238.) The "plain error" doctrine does not save defendant in this case. First, the evidence was not "closely balanced." As stated above, two eyewitnesses testified they saw defendant and another man alternatively carrying and dragging the victim along the sidewalk. Additionally, defendant was positively identified in a lineup and, subsequently, made a confession. This evidence more than supported the jury's verdict.

Second, the alleged error in failing to give a lesser-included offense instruction was not of such magnitude as to have denied the

defendant a fair trial. In very few situations does a failure to give an instruction rise to the level of plain error. The Illinois Supreme Court has held that, in criminal cases, the failure to give instructions as to the burden of proof, the presumption of innocence (*People v. Layhew* (1990), 139 Ill. 2d 476, 486, 564 N.E.2d 1232, 1236-37), or the essential elements of the crime charged may constitute "plain error." (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 222, 429 N.E.2d 861, 864.) The reason these errors can be of such magnitude as to constitute "plain error" is because they are fundamental concepts in our American system of justice and often necessary to give a defendant a fair trial and to allow the jury to properly weigh the evidence. (See *Ogunsola*, 87 Ill. 2d at 222-23, 429 N.E.2d at 864-65.) However, the failure to give a lesser-offense instruction, in this case at least, does not rise to this magnitude and did not deny defendant a fair trial. As illustrated above, the evidence was more than sufficient to support defendant's conviction for first-degree murder. Additionally, even assuming such an instruction was properly tendered by defense counsel and could have been given, failure to allow the jury to convict defendant of a lesser crime did not deny him a fair trial where the evidence supported his first-degree murder conviction. Therefore, under the rule of waiver and in light of the plain error doctrine's inapplicability, the question of whether it was error to fail to instruct the jury on lesser-included offenses was not preserved for review.

Defendant's second argument on appeal is that he was denied his right to the effective assistance of counsel because defense counsel failed to file a pretrial motion to quash his arrest for lack of probable cause. Specifically, he maintains that counsel should have argued that he was unconstitutionally seized when he first accompanied the detectives to the police station. Defendant asserts that such a motion would have been granted due to the length of time he spent at the police station prior to his "official" arrest and, therefore, his subsequent confession would have been suppressed as a product of the illegal arrest.

In order for a defendant to prevail when challenging the effectiveness of his trial counsel, the defendant must establish (1) that counsel's performance was deficient in that it fell below an objective standard of reasonableness, and (2) that but for defense counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68; *People v. Albanese* (1984), 104 Ill. 2d

504, 525, 473 N.E.2d 1246, 1255; *People v. Fauntleroy* (1992), 224 Ill. App. 3d 140, 164, 586 N.E.2d 292, 307.) A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) The *Strickland* court stated, however, that there is a "strong presumption" that any challenged act was part of a "sound trial strategy." (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 695, 104 S. Ct. at 2065-66.) The *Strickland* court instructed that in order to avoid the "distorting effects of hindsight," courts must indulge in a strong presumption that counsel rendered adequate assistance and made all decisions in the exercise of "reasonable professional judgment." *Strickland*, 466 U.S. at 689-90, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065-66.

Illinois courts have held that whether defense counsel's failure to make a motion to suppress is *per se* incompetence depends upon the circumstances of each case. (*People v. Fernandez* (1987), 162 Ill. App. 3d 981, 987, 516 N.E.2d 366, 370.) As a general rule, the filing of pretrial motions is considered a matter of professional judgment and, as such, trial tactics which are beyond the scope of an appellate review of defense counsel's competence. (*People v. Mendez* (1991), 221 Ill. App. 3d 868, 873, 582 N.E.2d 1265, 1269; *People v. Purnell* (1984), 126 Ill. App. 3d 608, 624, 467 N.E.2d 1160, 1171; *People v. Brittain* (1976), 35 Ill. App. 3d 1047, 1054, 342 N.E.2d 814, 819.) Therefore, a possible error in that judgment does not rise to the level of ineffective assistance. (*Brittain*, 35 Ill. App. 3d at 1054, 342 N.E.2d at 819.) A defendant has a fundamental constitutional right under the due process clause, however, to have the trial judge determine outside the jury's presence, as a preliminary matter, any questions as to the voluntariness of a confession. (*People v. Neeley* (1980), 90 Ill. App. 3d 76, 80, 412 N.E.2d 1010, 1013, citing *Jackson v. Denno* (1964), 378 U.S. 368, 390, 12 L. Ed. 2d 908, 923, 84 S. Ct. 1774, 1788.) Therefore, when Illinois courts have found an attorney's failure to file a pretrial motion to be ineffective assistance of counsel, the question has invariably involved the voluntariness of a confession. (See *People v. Fernandez* (1987), 162 Ill. App. 3d 981, 988-89, 516 N.E.2d 366, 371; *People v. Neeley* (1980), 90 Ill. App. 3d 76, 79-81, 412 N.E.2d 1010, 1013-14; *People v. Brinson* (1980), 80 Ill. App. 3d 388, 393-94, 399 N.E.2d 1010, 1014; *People v. Odom* (1966), 71 Ill. App. 2d 480, 482-85, 218 N.E.2d 116, 118.) Thus, the general rule in Illinois is that a trial counsel's decision to file or not to file a pretrial motion is a matter of professional judgment beyond the scope of appellate review.

However, if defense counsel fails to move to suppress statements which defendant claims were physically coerced or for which there is independent evidence supporting the assertion that the statements were not voluntary, counsel's conduct is subject to appellate scrutiny and will be deemed ineffective if the two-pronged *Strickland* test is satisfied; the reason being that failure to file such a motion gives the defendant "no protection whatsoever against being convicted on the basis of a coerced confession." *Odom*, 71 Ill. App. 2d at 484, 218 N.E.2d at 118.

In *Fernandez*, although there was no evidence of coercion, counsel was found to have rendered ineffective assistance for failing to file a motion to suppress because the defendants' mental retardation should have alerted counsel to the possibility that the statements were involuntary. Additionally, counsel admitted that her failure to make a timely challenge to the voluntariness of the confessions was due to her misunderstanding of the law and not to tactical considerations. (*Fernandez*, 162 Ill. App. 3d at 988-89, 516 N.E.2d at 371.) In *Neeley, Brinson,* and *Odom,* failure to file a motion in the face of the defendant's contentions that he was physically coerced into confessing also was found to be ineffective assistance of counsel.

■ In the instant case, defendant received a pretrial hearing outside the presence of the jury in which he challenged the voluntariness of his incriminating statement. Defendant asserted he was physically coerced into making a confession and counsel filed a motion to quash on this ground. The trial judge ultimately determined that the State made a *prima facie* showing of the voluntariness of defendant's confession, that defendant was not abused, and that defendant was not arrested or confined against his will until after he was identified in a lineup on December 28. Therefore, defendant received the effective assistance of counsel required by Illinois law when his attorney challenged the voluntariness of his confession in response to his claims of physical coercion. Consequently, we conclude that counsel's decision not to make a pretrial motion challenging the propriety of defendant's arrest was a matter of attorney judgment and beyond appellate review.

Defendant's last argument on appeal, as raised in his supplemental brief, is that he was denied his right to the effective assistance of counsel because his attorney failed to tender a jury instruction regarding the lesser-included offense of second-degree murder. Defendant argues that his statement to the police that he and the victim were involved in a dispute over a bottle of wine supports a

second-degree murder instruction based on an unreasonable belief of self-defense. Therefore, he asserts, failure to tender such an instruction was objectively unreasonable because it left the jury with only two choices: either convict defendant or acquit him. As a result, he maintains that if such an instruction had been given to the jury, the outcome of the trial would have been different. The State responds to this argument by asserting that the decision not to tender such an instruction for second-degree murder was "sound trial strategy" and, in any event, not supported by the evidence.

█▌ Generally, counsel's decision to argue one theory of defense to the exclusion of another is considered trial strategy (*People v. Mikell* (1991), 217 Ill. App. 3d 814, 821, 577 N.E.2d 1300, 1306) and defense trial strategy will not support an ineffectiveness claim unless that strategy is unsound. (*People v. Barrow* (1989), 133 Ill. 2d 226, 248, 549 N.E.2d 240, 249.) Therefore, an unsuccessful defense will not support an ineffective assistance claim unless that defense was unsound. Moreover, where counsel reasonably believes that a defense is meritless, "he may strategically refrain from seeking an instruction." (*People v. King* (1991), 218 Ill. App. 3d 248, 253, 578 N.E.2d 217, 221.) In Illinois, one way in which a person can be convicted of second-degree murder is when the State shows beyond a reasonable doubt that he has committed first-degree murder *and* the defendant proves by a preponderance of the evidence that he had an unreasonable belief that deadly force was justified. (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(2); see *People v. Newbern* (1991), 219 Ill. App. 3d 333, 358-59, 579 N.E.2d 583, 599-600.) In light of the defendant's burden of proof and the evidence adduced at trial, defense counsel could have reasonably determined that tendering a second-degree murder instruction was without merit.

According to defendant's statement to the police (which at trial he claimed was physically coerced and untrue), he encountered the victim in the hallway at 1220 West 69th Street and asked him to share his bottle of wine. When the victim refused and pushed defendant, defendant responded by banging the victim's head against the wall, releasing him, and allowing him to fall down the stairs. As the victim lay at the bottom of the stairs bleeding and apparently unconscious, Robert House came in and broke the victim's cane over his body. Defendant and House then carried the victim, who could not walk, outside. He was too heavy, so they dragged him by his arms and then his legs. According to defendant's statement, the victim "began to come to" at which time House stabbed him with a broken bottle. When they got him to the

rear stairwell of the building at 1226 West 69th Street, they covered him with trash and debris so no one could find him. According to defendant's statement, he was still moaning. At trial, two witnesses testified that they saw defendant and House alternately carrying and dragging the victim's limp body. The medical examiner testified that the cause of death was blunt trauma and multiple stab wounds. Along with first-degree murder, the jury was given an accountability instruction. Based on defendant's statement to the police and the witness testimony in conjunction with defendant's defense of mistaken identity, defense counsel could have reasonably believed either that the instruction was not supported by the evidence or that a jury would not believe that defendant had the unreasonable belief he was acting in self-defense.

Additionally, it was not objectively unreasonable, as the defense asserts, to only give the jury the choice of convicting defendant of first-degree murder or acquitting him of any crime. A defendant is not entitled to a lesser-offense instruction "simply in the hope that the jury will exercise compassion and convict on the lesser offense." (*People v. Tiller* (1978), 61 Ill. App. 3d 785, 791, 378 N.E.2d 282, 288.) In *People v. Barnard* (1984), 104 Ill. 2d 218, 231-32, 470 N.E.2d 1005, 1009-10, the Illinois Supreme Court recognized that it is often a valid trial strategy to not give a lesser-offense instruction in order to prevent a compromise verdict and to force the jury to debate the defendant's guilt or innocence. (See *People v. Canet* (1991), 218 Ill. App. 3d 855, 863, 578 N.E.2d 1146, 1151.) According to defendant's argument, however, failure to tender a lesser-offense instruction where there is even the slightest evidence in the record to support such an instruction would be *per se* ineffective assistance. The Illinois Supreme Court has never enunciated such a rule and, in light of the *Barnard* decision, we believe it unwise to do so.

Defendant contends, however, that this case is analogous to the Illinois Supreme Court's decision in *People v. Pegram* (1988), 124 Ill. 2d 166, 529 N.E.2d 506. Defendant's analogy, however, is strained and unpersuasive. In *Pegram,* defendant's testimony was that two men forced him at gunpoint to assist them in a robbery. The principal contested issue at trial was whether defendant was compelled to participate in the crime. No instruction on the defense of compulsion, however, was tendered or given to the jury. In addition, the jury was not instructed that the State had the burden of proof to show beyond a reasonable doubt that defendant was not compelled. As a result, the court held that counsel had given inef-

fective assistance because the jury was not instructed as to the defense asserted throughout trial.

In the instant case, defendant's testimony was that he did not commit the crime. The principal contested issue at trial was his guilt or innocence, not whether he reasonably or unreasonably acted in self-defense. At no time during trial did defendant pursue the defense of second-degree murder or present any evidence to support self-defense. In fact, the evidence that defendant argues supports a second-degree murder instruction was his own statement to the police which at trial he denied was true. Therefore, we cannot say that the possible tactical decision not to give a lesser-offense instruction on second-degree murder was ineffective assistance.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.