2022 IL App (3d) 190167

Opinion filed January 6, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-19-0167 |
| v. | ) ) | Circuit No. 18-CF-151 |
| VICTORIA Y. REDMON, | ) ) | The Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE DAUGHERITY delivered the judgment of the court, with opinion.
Justices Hauptman and McDade concurred in the judgment and opinion.
_____

**OPINION**

¶ 1        After a jury trial, defendant, Victoria Y. Redmon, was convicted of one count of

predatory criminal sexual assault of a child (PCSA) (720 ILCS 5/11-1.40(a)(1) (West 2018)) of

D.T., one count of PCSA of J.M., and one count of permitting the sexual abuse (*id.* § 11-9.1A(a))

of B.P. Defendant was sentenced to consecutive prison terms of 9 years and 10 and a concurrent

prison term of 6 years, respectively. Defendant appeals, arguing that (1) her conviction for PCSA

of D.T. should be reversed outright because her trial counsel was ineffective for failing to move

to dismiss the charge on speedy trial grounds, (2) her conviction for permitting the sexual abuse

of B.P. should be reversed outright due to the State's failure to satisfy the charging requirement

of the applicable statute, and (3) any of her remaining convictions should be reversed and remanded for new trial due to cumulative error. We reverse outright defendant's convictions for PCSA of D.T. and permitting the sexual abuse of B.P. We also reverse defendant's conviction for PCSA of J.M. and remand that charge for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant, who was born in 1986, and her boyfriend, Bradley P., who was born in 1985, lived in a house in Peoria, Illinois, with their three children: D.T., J.M., and B.P., as a blended family.[1] D.T. was the son of defendant and Dameon T., J.M. was the son of defendant and Johnny M., and B.P. was the son of Bradley and another woman. In about December 2017, the three boys were removed from defendant and Bradley's home by the Department of Children and Family Services (DCFS) over concerns of possible physical abuse and placed temporarily with J.M.'s father, Johnny. D.T. was 10 years old at the time, and J.M. and B.P. were both 6 years old. While the boys were staying with Johnny, Johnny overheard J.M. make a statement to D.T. during an argument about D.T. putting his "pee pee" in B.P.'s mouth. Johnny confronted all three boys about the matter, and all three boys eventually told Johnny that defendant had made D.T. and J.M. put their penises in B.P.'s mouth and that the conduct had been happening for anywhere from one to three years. Johnny reported what the boys had said to DCFS but did not call the police directly.

¶ 4        In March 2018, while the boys were still living with Johnny, Johnny made a statement to D.T. about not wearing his pants down so low where people could see his underwear and indicated to D.T. that when a person did so in jail, it was an advertisement "that you want to get

_____

[1]For the purpose of simplicity and to further protect the identity of the children, we have omitted any suffixes from the names of the children and the parents.

it from the back." D.T. responded that someone had already done that to him. Johnny spoke to the boys about the matter, and all three boys told Johnny that Bradley had put his penis in their mouths and butts. Johnny again reported what the boys had said to DCFS but did not call the police directly or take the boys to a doctor to be physically examined. He also arranged for the boys to get counseling.

¶ 5  Later that month (March 2018), the boys were interviewed separately by a forensic interviewer, Peoria police officer Shawn Curry, at the Peoria County Children's Advocacy Center (CAC). During the interview, D.T. and J.M. told Curry that they had been sexually abused by defendant and Bradley on numerous occasions (that defendant had made D.T. and J.M. put their penises in B.P.'s mouth while Bradley was present, that Bradley had put his penis in all three of the boys' mouths, that it was defendant's and Bradley's idea for Bradley to do so, that D.T. had put his mouth on defendant's vagina while Bradley was present, and that defendant and Bradley had B.P. put B.P.'s penis in Bradley's and defendant's butts). B.P. made a similar statement to Curry but to a lesser extent (that defendant had made D.T. and J.M. put their penises in B.P.'s mouth while Bradley was present but that nothing else had occurred).

¶ 6  On March 19, 2018, a few days after the CAC interviews were conducted, defendant and Bradley were arrested for the alleged sex offenses. Defendant remained in custody throughout the entire duration of this case. The following day, defendant was charged by information with one count of aggravated criminal sexual abuse (committed against D.T.) and one count of permitting the sexual abuse of a child (committed against B.P.). The charging instrument alleged that both offenses took place between October 1 and December 19, 2017,[2] but did not specify

_____

[2]One of the counts in the initial charging instrument contained a typographical error and listed the year of the end date range of when the offense occurred as 2018 instead of 2017.

what act or conduct defendant had engaged in as to D.T. that had given rise to the aggravated criminal sexual abuse charge. Bradley was charged by information with two counts of PCSA and one count of permitting the sexual abuse of a child. Bradley's charging instrument alleged the same date range for the date of offense as defendant's.

¶ 7        A *Gerstein* hearing (see *Gerstein v. Pugh*, 420 U.S. 103, 124 (1975)) was held that same day to determine whether there was probable cause to hold defendant on the charged offenses. At the hearing, the prosecutor relied on the CAC interviews and told the court that the evidence would show that over the course of a year on a repeated basis, defendant had made D.T. and J.M. put their penises in B.P.'s mouth; would watch as Bradley performed sex acts on the children, including Bradley putting his penis inside all three of the boys' mouths and inside B.P.'s butt; and that defendant made D.T. perform oral sex on her. The trial court commented that it was confused as to why the prosecutor had not charged defendant with PCSA as well, since the prosecutor had described acts of sexual penetration. The prosecutor responded that the State had charged the acts of oral sex against D.T. as sexual conduct because of a belief that such acts did not constitute penetration since defendant was on the "receiving end." The trial court suggested to the prosecutor that the prosecutor's belief in that regard was incorrect. At the conclusion of the hearing, the trial court found that probable cause existed to hold defendant on the charged offenses.

¶ 8        On March 27, 2018, a superseding indictment was filed in defendant's and Bradley's cases. The indictment contained the same counts and allegations as the information that had previously been filed against defendant (counts I and II) and Bradley.

¶ 9        On July 17, 2018, a second indictment was filed in defendant's case adding four new charges (counts III, IV, V, and VI). Counts III and IV charged defendant with PCSA and alleged

4

that defendant had committed an act of sexual penetration against D.T. (count III) and J.M. (count IV). Counts V and VI charged defendant with criminal sexual assault and alleged that defendant had committed an act of sexual penetration against a person by the use or threat of force. The date of offense alleged in the four new counts was the same date range that was alleged in the original two counts.

¶ 10      In August 2018, the State filed a notice of intent to use certain hearsay statements of the children at trial pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-10 (West 2018)). A hearing on the motion was later held, and the trial court ruled that the statements that the children had made to Johnny (J.M.'s father) and to Curry at the CAC were admissible. The trial court also ruled that certain pages from D.T.'s diary, where D.T. had made additional statements about sexual abuse, were admissible.

¶ 11      In January 2019, a joint jury trial was held in defendant's and Bradley's cases. The trial took two days to complete. Prior to the start of the trial, the State dismissed counts I, V, and VI against defendant so that the charges against defendant would match the charges against Bradley (one count of PCSA for committing an act of sexual penetration against D.T., one count of PCSA for committing an act of sexual penetration against J.M., and one count of permitting the sexual abuse of B.P.). During the trial, the State presented the testimony of Johnny, Curry, and all three children, each of whom testified that some or all of the sex acts occurred. The State also admitted the audio and video recording of the CAC interviews and the pages from D.T.'s diary. After the State rested, the defense called both defendant and Bradley to testify, each of whom denied that the sex acts occurred. Bradley also testified, however, that B.P. had told him about some of the sex acts with defendant. During closing argument, the prosecutor told the jury that there was evidence of multiple sex acts supporting the charges, including acts the boys

5

performed on each other, acts the boys performed on Bradley, and acts that some of the boys performed on defendant. The prosecutor also told the jury that it only had to believe that one act occurred that satisfied the elements of a charged offense in order to convict and that it could convict even if the individual jurors did not agree on which act had occurred. At the conclusion of the trial, the jury found both defendant and Bradley guilty of all three counts—the two counts of PCSA (D.T. and J.M.) and the one count of permitting the sexual abuse of a child (B.P.).

¶ 12    Defendant filed a posttrial motion for a judgment of acquittal notwithstanding the verdict or for new trial, which the trial court denied. The trial court subsequently sentenced defendant to consecutive prison terms of 9 years and 10 years on the two PCSA convictions and a concurrent prison term of 6 years on the permitting sexual abuse conviction. Defendant appealed.

¶ 13                                    II. ANALYSIS

¶ 14                        A. Ineffective Assistance of Counsel
                        Based on Failure to Raise Speedy Trial Violation

¶ 15    As her first point of contention on appeal, defendant argues that her trial counsel was ineffective for failing to move prior to trial to dismiss the charge against her for PCSA of D.T. (count III) on speedy trial grounds. Defendant asserts that such a motion would have been granted because (1) the charge in count III was subject to the compulsory joinder rule in that it was based upon the same act to D.T. as had been alleged in count I, which was later dismissed; (2) since the compulsory joinder rule applied to count III, the speedy trial term for count III began to run on the same date as the speedy trial term for count I—the day defendant was arrested; (3) under the *Williams* rule (*People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981)), any continuances to which defendant acquiesced or agreed prior to count III being filed could not be attributed to defendant as to the speedy trial term on count III; and (4) the 120-day speedy

6

trial term expired before defendant was tried on count III. Defendants asks, therefore, that we reverse outright her conviction on count III for PCSA of D.T.

¶ 16     The State argues that defendant's trial attorney was not ineffective in this case for failing to file a motion to dismiss count III on speedy trial grounds. The State asserts that such a motion would have been futile because (1) the compulsory joinder rule did not apply to count III since count III was not based upon the same act to D.T. that had been alleged in count I, (2) the speedy trial term for count III did not start to run until count III was filed, and (3) defendant was tried on count III before the speedy trial term expired. Thus, the State contends that defendant has failed to show either deficient performance or prejudice based upon her trial attorney's failure to file a motion to dismiss count III on speedy trial grounds. The State asks, therefore, that we affirm defendant's conviction on count III for PCSA of D.T.

¶ 17     In reply, defendant asserts that although the State could have charged counts I and III based upon different or separate acts, it did not do so here, as indicated by the representations the State made at both the *Gerstein* hearing and defendant's trial. Defendant again asks, therefore, that we reverse outright her conviction on count III for PCSA of D.T. based upon the ineffective assistance of trial counsel in failing to move to dismiss count III prior to trial on speedy trial grounds.

¶ 18     An issue of ineffective assistance of counsel presents the reviewing court with a mixed question of fact and law. *People v. Davis*, 353 Ill. App. 3d 790, 794 (2004). To the extent that the trial court's findings of fact bear upon the determination of whether counsel was ineffective, those findings must be given deference on appeal and will not be reversed unless they are against the manifest weight of the evidence. See *id.* However, the ultimate question of whether counsel's

7

actions support a claim of ineffective assistance is a question of law that is subject to *de novo* review on appeal. See *id.*

¶ 19     A claim of ineffective assistance of counsel is analyzed under the two-pronged, performance-prejudice test established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance was deficient and (2) the deficient performance prejudiced the defendant to the extent that he or she was deprived of a fair proceeding. *Id.* A defendant's failure to satisfy either prong of the *Strickland* test prevents a finding of ineffective assistance of counsel. *Id.* In reviewing a claim of ineffective assistance of counsel, a court must consider defense counsel's performance as a whole and not merely focus upon isolated incidents of conduct. See *People v. Cloyd*, 152 Ill. App. 3d 50, 57 (1987). A strong presumption exists that defense counsel's conduct was within the wide range of reasonable professional assistance and that all decisions were made in the exercise of reasonable professional judgment. *Id.* at 56-57; *People v. Martin*, 236 Ill. App. 3d 112, 121 (1992). Matters of trial strategy will generally not support a claim of ineffective assistance of counsel, even if defense counsel made a mistake in trial strategy or tactics or made an error in judgment. *Patterson*, 217 Ill. 2d at 441; *People v. Perry*, 224 Ill. 2d 312, 355 (2007). In addition, defense counsel cannot be found ineffective for failing to file a motion that would have been futile. See *Patterson*, 217 Ill. 2d at 438 (stating that rule in the context of defense counsel's failure to file a motion to suppress evidence).

¶ 20     The issue in this case involves the interrelationship between the speedy trial rule (725 ILCS 5/103-5 (West 2018)) and the compulsory joinder rule (720 ILCS 5/3-3 (West 2018)). The speedy trial rule provides, in pertinent part, that every defendant in custody in this State for an

8

alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant. 725 ILCS 5/103-5(a) (West 2018); *People v. Hall*, 194 Ill. 2d 305, 326 (2000). Any period of delay occasioned by the defendant will toll the applicable statutory period. *Hall*, 194 Ill. 2d at 327.

¶ 21    A calculation of the speedy trial period becomes more complicated when multiple charges are filed against a defendant at different times. In such a situation, it must be determined whether the compulsory joinder rule applies. Under the compulsory joinder rule, multiple charges against a defendant must be joined in a single prosecution if the following three conditions are satisfied: (1) the multiple charges are known to the prosecutor when the prosecution begins, (2) the charges are within the jurisdiction of a single court, and (3) the charges are based upon the same act. See 720 ILCS 5/3-3(b) (West 2018); *People v. Quigley*, 183 Ill. 2d 1, 6-7 (1998). If the compulsory joinder rule applies, the multiple charges are subject to the same speedy trial period, which begins to run when the defendant was taken into custody, even if some of the charges are brought at a later date. *Quigley*, 183 Ill. 2d at 13; *People v. Phipps*, 238 Ill. 2d 54, 66 (2010). Thus, when the compulsory joinder rule applies, the filing of a subsequent charge does not give rise to a new, separate speedy trial period relative to that charge. See *Quigley*, 183 Ill. 2d at 13; *Phipps*, 238 Ill. 2d at 66.

¶ 22    The rules for tolling the speedy trial period are also more complicated if the compulsory joinder rule applies. When the compulsory joinder rule applies, a delay that occurs on the original charge and that is attributable to defendant will not toll the speedy trial period as to a subsequent charge, if the delay occurred before the subsequent charge was filed, because the subsequent charge was not before the court when the delay occurred and it cannot be assumed that the defendant would have agreed to the delay if the new charge had been pending. See

9

*Phipps*, 238 Ill. 2d at 66. The purpose of that rule, known as the *Williams* rule, is to prevent the defendant from being subject to a trial by ambush whereby the State could lull a defendant into a false sense of security on a lesser charge while actually preparing to file, and to go to trial on, a more serious charge. See *id.* at 67. The *Williams* rule, however, only applies when the initial and subsequent charges are subject to the compulsory joinder rule. *Id.* at 66-67.

¶ 23     Upon reviewing the record in the present case, we find that the new charge against defendant (count III) was subject to the compulsory joinder rule. Contrary to the State's assertion, the charge in count III was based upon the same act committed to D.T. that was alleged in count I. Indeed, there is no indication in the record that the State was seeking to charge separate or different acts in counts I and III. The prosecutor's comments at the *Gerstein* hearing and in closing argument confirm that the State's intention was to group all of the conduct to D.T. into a single count. Because the compulsory joinder rule applied to count III, the speedy trial term started to run on count III at the same time that it started to run on count I—when defendant was arrested and taken into custody. Thus, the State failed to bring defendant to trial on count III within the 120-day speedy trial term. A motion to dismiss the charge on speedy trial grounds would have been successful, and defense counsel was ineffective for failing to file such motion prior to the trial in this case. Defendant's conviction on count III for PCSA of D.T., therefore, must be reversed outright. See *People v. Rogers*, 2020 IL App (3d) 180088, ¶ 41 (reversing the defendant's conviction outright where defense counsel was ineffective for failing to file a motion to dismiss the charge against the defendant on speedy trial grounds), *rev'd on other grounds*, 2021 IL 126163, ¶ 32.

¶ 24                    B. Compliance With Statutory Charging Requirement

Relating to Permitting the Sexual Abuse of a Child

10

¶ 25    As her second point of contention on appeal, defendant argues that her conviction on count II for permitting the sexual abuse of a child must be overturned because the State failed to comply with the terms of the applicable statute, which required the State to charge the person who had actually committed the sexual abuse with a certain offense or offenses before it charged defendant with permitting that sexual abuse. More specifically, defendant asserts that because neither Bradley, D.T., nor J.M. were charged with the sexual abuse of B.P., defendant could not be charged with permitting the sexual abuse of B.P. Defendant contends, therefore, that her conviction for permitting sexual abuse must be reversed outright either because the State lacked the authority to charge her with the offense (since it did not comply with the terms of the statute), because her trial attorney was ineffective for failing to move to dismiss the charge prior to trial, or because the requirement contained in the statute was an exemption that the State failed to prove did not apply or her defense counsel was ineffective in failing to raise. For those reasons, defendant asks that we reverse outright her conviction on count II for permitting the sexual abuse of B.P.

¶ 26    The State argues that defendant's conviction for permitting the sexual abuse of B.P. is proper and should be upheld. In support of that argument, the State asserts first that the statutory charging requirement does not apply when a defendant is charged as an accomplice through a theory of accountability, such as defendant in the present case, since the accountability statutes specifically provide that the principal does not have to be charged or convicted, be amenable to justice, or have the requisite mental state for the offense. According to the State, the interpretation of the statute advocated by defendant here would lead to absurd and unintended results in which the State in this case would be required to prosecute the other child victims (D.T. and J.M.) for acts to B.P. that defendant forced them to perform. Second, and in the

11

alternative, the State asserts that it complied with the charging requirement of the statute when it charged defendant with aggravated criminal sexual abuse as alleged in count I of the charging instrument. The State asks, therefore, that we reject defendant's arguments on this issue and that we affirm defendant's conviction on count II for permitting the sexual abuse of a child.

¶ 27	In reply to the State's arguments on this issue, defendant makes numerous assertions. First, defendant asserts that the permitting sexual abuse statute is not intended to apply to situations where the State has the ability to charge a person with sexual abuse offenses under an accountability theory. Rather, defendant maintains, the permitting sexual abuse statute was designed to address the situation where a caregiver does not actively aid, solicit, or cause someone to commit a sexual abuse offense but merely permits the offense to occur in violation of his or her affirmative legal duty to try to stop such abuse. Second, defendant asserts that the permitting sexual abuse statute does not conflict with the accountability statutes and that interpreting the permitting sexual abuse statute as written does not create any added difficulty for the State in prosecuting people who are guilty of actually committing sexual abuse, as either a principal or accomplice, for the sexual abuse offenses that they actually committed. Such an interpretation, according to defendant, would also not prevent a person from being convicted of permitting sexual abuse under an accountability theory. Third, defendant asserts that if a conflict does exist between the permitting sexual abuse statute and the accountability statutes, the permitting sexual abuse statute would control as the more specific statute. Fourth, defendant asserts that contrary to the State's contention, charging defendant with a sexual abuse offense in count I of the charging instrument did not satisfy the requirement of the permitting sexual abuse statute because B.P. was not the victim listed in count I. Fifth and finally, defendant asserts that any changes that should be made to the permitting sexual abuse statute are for the legislature to

12

make through the legislative process and not for the courts to make through statutory interpretation. For all of the reasons stated, therefore, defendant again asks that we reverse outright her conviction on count II for permitting the sexual abuse of a child.

¶ 28 The interpretation of a statute is a matter that is subject to a *de novo* standard of review on appeal. *People v. Baskerville*, 2012 IL 111056, ¶ 18. The statute at issue in this case, section 11-9.1A(f) of the Criminal Code of 2012 (Criminal Code), provides that:

> "A person may not be charged with the offense of permitting sexual abuse of a child under this Section until the person who committed the offense is charged with criminal sexual assault, aggravated criminal sexual assault, predatory criminal sexual assault of a child, criminal sexual abuse, aggravated criminal sexual abuse, or prostitution." 720 ILCS 5/11-9.1A(f) (West 2018).

¶ 29 The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Baskerville*, 2012 IL 111056, ¶ 18. The most reliable indicator of that intent is the plain and ordinary meaning of the language of the statute itself. *Id.* In determining the plain meaning of statutory terms, a court should consider the statute in its entirety and keep in mind the subject the statute addresses and the apparent intent of the legislature in enacting the statute. *Id.*; 5 ILCS 70/1.01 (West 2018) (in construing a statute, "[a]ll general provisions, terms, phrases and expressions shall be liberally construed in order that the true intent and meaning of the General Assembly may be fully carried out"). If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory construction. *People v. Dabbs*, 239 Ill. 2d 277, 287 (2010). A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. *Baskerville*, 2012 IL 111056, ¶ 18. However, if the language of a statute is

13

ambiguous in that it is susceptible to more than one reasonable interpretation, a court may consider extrinsic aids to determine the meaning of the statutory language. See *Williams v. Illinois State Scholarship Comm'n*, 139 Ill. 2d 24, 51 (1990).

¶ 30　　　　In the present case, after reviewing section 11-9.1A(f) of the Criminal Code, we find that its language is clear and unambiguous and that the statute must be enforced as written. See *Dabbs*, 239 Ill. 2d at 287. Neither D.T., J.M., nor Bradley were charged with sexually abusing B.P. The State, therefore, could not maintain its charge against defendant for permitting D.T., J.M., or Bradley to sexually abuse B.P. See 720 ILCS 5/11-9.1A(f) (West 2018); *People v. Determan*, 397 Ill. App. 3d 929, 935 (2009) (finding that the State lacked authority to charge the defendant with willfully failing to pay child or spousal support because the State failed to comply with the statutory requirement that the charge could not be filed until after the person receiving child or spousal support filed a verified complaint with the trial court). Although a violation of the permitting sexual abuse statute can be charged through a theory of accountability (if one solicits, aids, or abets another in committing the offense of permitting the sexual abuse of a child), it cannot be charged in the manner that the State suggests, which in this case would essentially allow defendant to be charged with permitting herself to sexually abuse B.P. In addition, and contrary to the State's assertion, charging defendant with the aggravated criminal sexual abuse of D.T. in count I did not satisfy the charging requirement of section 11-9.1(A)(f) since B.P. was not the victim listed in count I. We, therefore, agree with defendant that her conviction on count II for permitting the sexual abuse of a child must be reversed outright in this case. See *Determan*, 397 Ill. App. 3d at 935.

¶ 31　　　　　　　　　　　　　C. Cumulative Error

14

¶ 32    As her final point of contention on appeal, defendant argues that she was deprived of her due process right to a fair trial due to the cumulative effect of numerous prejudicial trial errors. As the first of those errors, defendant asserts that her trial was unfairly tainted by the presence of a charge or charges (counts III and/or II) against her that should have been dismissed prior to trial (the two prior issues raised by defendant in this appeal). Next, defendant complains that she was prejudiced by a litany of additional trial errors, such as missing or incorrect jury instructions, prosecutorial misstatements or misconduct, and the erroneous admission of evidence. Defendant recognizes that her trial counsel did not preserve some or all of the errors for appellate review but asks that we reach the merits of those errors, nevertheless, through the application of the plain error doctrine or because trial counsel was ineffective in failing to preserve the errors. Based upon the cumulative effect of the alleged errors, defendant requests that we reverse any remaining convictions and that we remand this case for further proceedings (presumably, a new trial).

¶ 33    The State argues that defendant was not deprived of a fair trial in this case. In support of that argument, the State makes three alternative assertions. First, the State asserts that defendant forfeited some of the alleged errors by failing to object to the errors at trial and/or failing to raise the errors in a posttrial motion. Second, the State asserts that no error occurred as to many of the errors claimed. Third and finally, the State asserts that even if error occurred as to some of defendant's claimed errors, defendant was not prejudiced by those errors and the errors did not rise to the level of depriving defendant of a fair trial. For those reasons, the State asks that we affirm defendant's remaining convictions.

¶ 34    A defendant in a criminal case, whether guilty or innocent, is entitled to a fair, orderly, and impartial trial conducted according to the law. *People v. Bull*, 185 Ill. 2d 179, 214 (1998).

15

That due process right to a fair trial is protected by both the federal and state constitutions. See U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2; *People v. Blue*, 189 Ill. 2d 99, 138 (2000). It must be remembered, however, that no trial is perfect and that a defendant in a criminal case is entitled to a fair trial, not a perfect one. *Bull*, 185 Ill. 2d at 214. That principle notwithstanding, the courts have recognized that in some instances where the individual trial errors do not warrant reversal alone, the cumulative effect of those errors can deprive a defendant of a fair trial. *Blue*, 189 Ill. 2d at 137-40; *People v. Jones*, 2019 IL App (3d) 160268, ¶¶ 49-50; *People v. Fultz*, 2012 IL App (2d) 101101, ¶ 54. When such cumulative error occurs, due process and fundamental fairness require that the defendant's conviction be reversed and the case be remanded for a new trial, even when defendant's guilt is overwhelming, to preserve the integrity of the judicial process. See *Blue*, 189 Ill. 2d at 138-39; *Jones*, 2019 IL App (3d) 160268, ¶ 50; *Fultz*, 2012 IL App (2d) 101101, ¶ 54.

¶ 35      In the present case, after reviewing defendant's claims of error, we find that defendant was deprived of a fair trial on the remaining charge, count IV for PCSA of J.M., due to the cumulative error caused by the inclusion of the two charges that should have been dismissed prior to trial (see the two prior issues above). Although the State contends that the same evidence would have been presented at defendant's trial even if the two charges had been dismissed, we do not agree. If defendant had only been facing a charge of PCSA to J.M., the corroborative outcry statements that D.T. and B.P. had made to Johnny and to Curry at the CAC would not have been admissible under section 115-10 because D.T. and B.P. would no longer have been the victims of the charged offense. See *People v. Hayden*, 2018 IL App (4th) 160035, ¶¶ 107-36 (discussing in the context of severance of charges the difference in the law on admissibility of evidence for hearsay statements of the victim under section 115-10 and hearsay statements of a

16

propensity witness under section 115-7.3(b) (725 ILCS 5/115-7.3(b) (West 2018)) and concluding that certain hearsay statements would not have been admissible at the defendant's trial if the charges had been severed because the other child that defendant had molested would no longer have been "the victim" for the purpose of section 115-10 and because no applicable hearsay exception was present to allow for the admission of the statements). The State's additional evidence in that regard would have been limited to D.T.'s and B.P.'s own testimony on the witness stand about what defendant (and Bradley) had allegedly done to the children. See *id.*

¶ 36      At its heart, this case was a credibility determination between the children and defendant (and Bradley). The outcry statements of the children to Johnny and at the CAC were used to bolster the children's credibility at trial. Had those statements been inadmissible because neither D.T. nor B.P. were the victim of the charged offense, the State's case would have been significantly weakened. See *id.* ¶ 130 (recognizing in a case where two children were allegedly molested that the State could hardly claim that the children's corroborative outcry statements were insignificant after the State had gone to so much trouble to get the corroborative outcry statements admitted). We must conclude, therefore, that defendant was deprived of a fair trial on count IV in this case (PCSA of J.M.) due to cumulative error. Despite the hardship to the children, we are compelled by due process and fundamental fairness to reverse defendant's conviction on count IV for PCSA of J.M. and to remand the case for a new trial on that count. See *Blue*, 189 Ill. 2d at 138-39; *Jones*, 2019 IL App (3d) 160268, ¶ 50; *Fultz*, 2012 IL App (2d) 101101, ¶ 54. Having reached that conclusion, we need not address defendant's remaining allegations of cumulative error.

¶ 37                                    III. CONCLUSION

17

¶ 38　　　　　For the foregoing reasons, we reverse outright defendant's convictions on count III (PCSA of D.T.) and count II (permitting the sexual abuse of B.P.). We also reverse defendant's conviction on count IV (PCSA of J.M.) and remand the case for a new trial on that count.

¶ 39　　　　　Reversed and remanded with directions.

**No. 3-19-0167**

| | |
|---|---|
| **Cite as:** | *People v. Redmon*, 2022 IL App (3d) 190167 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 18-CF-151; the Hon. Kevin W. Lyons, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Steven Varel, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Nicholas Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |