(No. 55825.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. MAURICE PITTMAN, Appellant.

*Opinion filed October 22, 1982.*

Randy E. Blue, Deputy Defender, and Daniel M. Kirwan, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon (Gary Duncan, of counsel), for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Ellen M. Flaum and Terence M. Madsen, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In a jury trial in the circuit court of Madison County, defendant, Maurice Pittman, was convicted of the offense of unlawful delivery of a controlled substance (Ill. Rev. Stat. 1979, ch. 56½, par. 1401(b)) and sentenced to

six years' imprisonment consecutive to a five-year sentence imposed in another case. Defendant appealed, the appellate court affirmed (100 Ill. App. 3d 838), and we allowed defendant's petition for leave to appeal. 73 Ill. 2d R. 315.

The facts are adequately stated in the appellate court opinion and will be reviewed here only to the extent necessary to discuss the issues. On June 25, 1979, Robert Gubin, an informant, met with two law enforcement agents assigned to the Metropolitan Enforcement Group of Southwestern Illinois and advised them that he had arranged to purchase heroin from defendant at 828 Alby Street in Alton. The agents drove Gubin to the vicinity of the Alby Street address in their van, strip-searched him, and gave him $60 with which to make the purchase. They parked the van less than a block from 828 Alby Street. Gubin left the van and walked to the apartment building located at that address. He remained in the building for approximately nine minutes and returned to the agents, giving them an aluminum foil packet which contained a powdered substance later identified as heroin. Gubin testified that he had purchased the heroin from defendant with the money given to him by the agents. On cross-examination Gubin admitted that he had been convicted of numerous drug-related offenses. He also testified that prior to June 25, 1979, he had contacted law enforcement agents in Madison County and discussed with them the possibility of working with them in exchange for their help concerning some drug-related charges pending against him in Madison County. Gubin and the law enforcement agents testified that no specific agreements were made as to these charges.

The defense called several witnesses. Robert Belcher testified that while he and Gubin were inmates at the Madison County jail Gubin had told him that in order to obtain leniency on the charges pending against him he

intended to "set up" a victim. Gubin denied ever having made such a statement. Reggie Taylor testified that on June 25, 1979, he was at 828 Alby Street from 5 or 6 p.m. until approximately 8:30 p.m. and that he saw neither Gubin nor defendant in the apartment. Taylor stated that the apartment belonged to Henry Smith, and that the only people in the apartment that evening were Henry Smith, Smith's nephews, and Ben Jones, defendant's brother. Taylor testified he remembered the date clearly because Smith's wife had just died. Taylor testified that he had seen defendant on the date in question at about noon at defendant's home located at 1204 Cave Springs in Alton. During cross-examination Taylor denied that he was a close friend of defendant but, over objection, admitted that he had testified on defendant's behalf in two proceedings. Henry Smith testified that his sister, Shirley Pittman, was married to defendant and that in June of 1979 defendant and Shirley had been spending quite a bit of time with him and his family at his apartment at 828 Alby because his wife had been murdered on May 18, 1979, and he needed help in taking care of his son. Not specifying a time, Smith stated that on June 25, 1979, Gubin had come to his apartment looking for Shirley Pittman, who then left his apartment with Gubin. Benjamin Jones, defendant's brother, testified that on June 25, 1979, at approximately 11:30 a.m., he met defendant at defendant's house on Cave Springs Road. Jones stated that they drove to Edwardsville to meet with an assistant public defender, whom they were unable to contact. Jones stated they subsequently drove to East Alton, where they met with a different attorney. Jones stated they left East Alton at about 4:30 p.m. and drove to their mother's home in Alton, arriving there a short time after 5 p.m. Jones stated that he dropped defendant off at their mother's home and then drove to Smith's apartment, where he picked up defendant's wife,

who accompanied him back to his mother's home, where he, defendant and defendant's wife had dinner. The attorney with whom Jones stated he and defendant had visited until 4:30 p.m. on June 25, 1979, could not recall whether he met with defendant on that date.

Relying primarily on *People v. Bazemore* (1962), 25 Ill. 2d 74, defendant contends that the uncorroborated testimony of the informant, who had been convicted of numerous narcotics offenses, was insufficient to prove him guilty beyond a reasonable doubt. The People argue that the decision in *Bazemore* has little precedential value here because the record does not show that Gubin was a narcotics addict, although admittedly he had been convicted of crimes involving the possession of marijuana and other unspecified controlled substances. The People point out that the jury was aware of these convictions when it considered Gubin's testimony.

*Bazemore,* and the cases cited therein, require that when the People's case rests solely upon the credibility of an admitted narcotics addict, that testimony must be carefully and closely scrutinized. (*People v. Bazemore* (1962), 25 Ill. 2d 74, 76-77.) Even though there is no evidence that Gubin was a narcotics addict, we are of the opinion that under the circumstances of this case his testimony must nevertheless be carefully and cautiously scrutinized. The only witness who testified that the drug transaction actually took place, he had been convicted of numerous drug-related offenses. There were charges pending against him in Madison County at the time he was helping law enforcement agents in this case, and the record shows that he hoped to receive leniency as to these charges by cooperating with the agents. Although both he and the agents denied that he had received compensation for his participation in the events leading to defendant's conviction, the record shows that he did receive approximately $80 from the agents for travel ex-

penses. These facts, however, do not render the evidence of guilt insufficient; they go to the weight to be given the informant's testimony. The credibility of witnesses is a matter to be determined by the trier of fact, and that determination will not be set aside unless so unsatisfactory as to justify a reasonable doubt of defendant's guilt. (*People v. Wilson* (1970), 45 Ill. 2d 581, 586; *People v. Perkins* (1962), 26 Ill. 2d 230, 235.) The record shows that the jury was well aware of those facts having an adverse bearing on Gubin's veracity but nevertheless apparently chose to accept his version of the transaction over the testimony of the defense witnesses. Further, as pointed out in the opinion of the appellate court, there is some degree of corroboration of Gubin's testimony. From our review of the record we find no basis to reject the testimony as incredible. We conclude that the proof presented by the People, if believed, was sufficient to support the conviction. The sufficiency of the evidence was thoroughly reviewed and discussed by the appellate court, and further discussion here would serve no useful purpose.

Defendant argues here, as he did in the appellate court, that the People improperly attempted to inform the jury of other criminal conduct. The transcript shows that a few sentences into his opening statement the assistant State's Attorney told the jury that Gubin would testify that he had obtained both heroin and cannabis from defendant. Defense counsel immediately objected to the reference to cannabis, and a conference was held outside the presence of the jury. In the course of the conference the People argued that defendant had given notice of the defense of entrapment and the evidence was properly admissible to rebut that asserted defense. Defense counsel stated that no defense of entrapment would be presented. Following the conference the court advised the jury that the objection by defense counsel

was sustained and directed the assistant State's Attorney to start over with his opening statement. The opening statement as presented to the jury contained no reference to cannabis. Under the circumstances shown, assuming *arguendo* that the reference to cannabis was error, it was not so prejudicial as to require reversal. An improper remark does not constitute reversible error unless it results in substantial prejudice to the accused. *People v. Nilsson* (1970), 44 Ill. 2d 244.

Defendant also contends that his prior criminal record was improperly brought to the jury's attention when his witness, Reggie Taylor, was asked whether he had testified on defendant's behalf on two previous occasions. The appellate court discussed defendant's contentions (see 100 Ill. App. 3d 838, 843), and we agree that no reversible error occurred.

Finally, defendant contends that the circuit court erred in imposing a consecutive sentence. Section 5—8—4(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(b)) provides:

> "(b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record."

Defendant argues that the circuit court failed to make the required finding that a consecutive term was required to protect the public from his further criminal conduct. He argues too that there is no basis in the record for the imposition of a consecutive sentence. Defendant contends that the appellate court searched the record and concluded, erroneously, from certain remarks made by the circuit court that it was of the opinion required by the statute for imposition of a consecutive sentence. He argues that the portion of the record relied upon by the appellate court as the ba-

sis for the circuit court's opinion in imposing a consecutive sentence relates to defendant's history of criminal activity, a factor to be taken into consideration when imposing a sentence in excess of the statutory minimum (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1)), or as one of the statutory factors to be considered in aggravation (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)). In support of the contention that the record fails to show that a consecutive sentence is necessary to protect the public from further criminal conduct, defendant states that prior to the instant offense he had never been charged with delivery of narcotics. The People argue that the sentencing court is required to set out explicitly an adequate basis for its opinion, but need not include "a ritualistic recitation" of the statutory language that "a consecutive term is required to protect the public from further criminal conduct by the defendant." The People argue that the imposition of a consecutive sentence necessarily implies that the court is of the opinion that the added term is necessary to protect the public and argue that the court's review of defendant's criminal history, particularly his drug-related criminal conduct, set forth a sufficient basis for the court's determination that a consecutive sentence was required to protect the public.

This court has not previously considered the precise issue presented, and the decisions of the appellate court are not in agreement. See *People v. Miller* (1981), 101 Ill. App. 3d 1029, 1041-42; *People v. Mathes* (1981), 101 Ill. App. 3d 205, 213-14; *People v. Thomas* (1981), 98 Ill. App. 3d 852, 859; *People v. Johnson* (1981), 98 Ill. App. 3d 228, 235-36; *People v. Gaston* (1980), 88 Ill. App. 3d 314, 316; *People v. Green* (1980), 83 Ill. App. 3d 982, 988.

We do not agree with the People's contention that it may be implied from the imposition of the consecutive sentence that the court was of the opinion that the consecutive term was necessary. Although it would be better prac-

tice to state the opinion in the language of the statute, failure to do so does not necessarily require reversal. (See *People v. Davis* (1982), 93 Ill. 2d 155; *People v. Kuesis* (1980), 83 Ill. 2d 402, 409-10; *People v. Cox* (1980), 82 Ill. 2d 268, 280-81; *People v. Meeks* (1980), 81 Ill. 2d 524, 534.) What is required is that the record show that the sentencing court is of the opinion that a consecutive term is necessary for the protection of the public. In sentencing defendant, the circuit court stated:

"Mr. Pittman, this Court presided over your trial in the conviction pending before the Court, and that was unlawful delivery of heroin. The court presided over your other conviction which also occurred in 1979 which was unlawful use of weapons. In going through the presentence report and also with you during the trial—in the trial, the Court has been made aware of a prior conviction in California in 1976, approximately 1976, of selling or furnishing cocaine, and in 1970, in St. Louis, there is a conviction for possession of heroin. Three of your four felony convictions pertain to drugs. These are not drugs that are— These are serious drugs. Two of them are heroin and one of them is cocaine. The Court has had you and your wife before it on many occasions. I'm aware of your family situation. ***."

While it is true that defendant's criminal history was relevant to sentencing provisions other than section 5—8—4(b), that fact does not make defendant's criminal history any less valid a basis for the imposition of a consecutive sentence. As to the sufficiency of the reasons set forth in the record for the consecutive sentence, it is settled that a reviewing court will not substitute its judgment for that of a sentencing court merely because it would have balanced the appropriate factors differently. (*People v. Perruquet* (1977), 68 Ill. 2d 149.) The record demonstrates that defendant had several felony convictions, including a conviction for unlawfully selling or furnishing cocaine. We conclude that the reasons for sentencing set forth in the record are sufficient to satisfy the requirements of section

5—8—4(b).

For the reasons stated the judgment is affirmed.

*Judgment affirmed.*